mortgage; that he believes the assignment was made at the instigation of the other defendants, and the action brought to deprive him of his interest. The plaintiff does not notice these allegations. It may well be that Lauck could not raise the money to satisfy the mortgage save through an assignment thereof by way of security, and thus was powerless to avert the foreclosure save by the means adopted. It appears by affi'davits that Steinert made his offer of payment and asked for the assignment at the request of Lauck, and for his benefit, and that he told the plaintiff in Lauck's presence that he came to her at Lauck's request. Therefore Steinert was not a mere volunteer to whom this right of subrogation should be denied. Gans v. Thieme, 93 N. Y. 225; Thomas on Mortgages, § 445. In Acer v. Hotchkiss, 97 N. Y. 395, 403, cited as contra by the appellant, the court say:

"One who is only a volunteer cannot invoke the aid of subrogation, for such a person can establish no equity. Gans v. Thieme, 93 N. Y. 232. *He must have paid upon request,* or as surety, or under some compulsion made necessary by the adequate protection of his own rights." (The italics are mine.)

The attitude of the other defendants did not preclude the court. See Bayles v. Husted, supra, per Pratt, J. The appellant cannot object that such defendants did not receive notice of the motion. Twombly v. Cassidy, 82 N. Y. 155. As the defendants were affiants for the plaintiff, they must have had knowledge of the motion, but they did not seek to appear or to be heard on appeal. Consequently, they are not objectors before this court. Twombly v. Cassidy, supra.

The question of defective tender is not available, inasmuch as there was a positive and unqualified refusal. Baumann v. Pinckney, 118 N. Y. 604, 616, 23 N. E. 916; Cleveland v. Rothwell, supra.

Order of the County Court of Nassau county affirmed, with $10 costs and disbursements. All concur.

---

### PRICE v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. April 21, 1905.)

1. SALES—CONTRACTS—BREACH BY VENDEE—RIGHTS OF VENDOR.
   Where a contract by plaintiff to furnish coal to defendant in installments stipulated for installment payments based on estimates by defendant's engineer of coal previously delivered, defendant's delay and refusal to pay certain estimates made by its engineer constituted such a breach as to entitle plaintiff to terminate the contract, and recover for so much thereof as had been performed.

2. SAME—INSTALLMENT PAYMENTS—CERTIFICATES OF GOODS FURNISHED—CONCLUSIVENESS.
   Where a contract for the delivery of coal in installments provided for the making of payments in installments according to estimates and certificates of the vendee's engineer, the estimates and certificates of the engineer were conclusive on the parties in the absence of any claim of fraud or mistake as to the quantity or value of the coal delivered.
   [Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 194.]

**3. SAME—DEFAULT OF VENDOR—NOTICE TO' DELIVER—MAILING OF NOTICE.**

A contract provided that, in case of the vendor's failure to deliver coal as ordered after written notice mailed to her by the vendee's engineer, the vendee should have the right to purchase coal in the open market. The vendee's engineer mailed and registered a letter to the vendor, notifying her to deliver coal, but erroneously addressed the letter to "Mr. P.," in consequence of which the post-office authorities refused to deliver the same to the vendee, because of her inability to give the addressee's receipt prescribed by Rev. St. §§ 3927, 3928 [U. S. Comp. St. 1901, p. 2686]. *Held,* that the notice sent to the vendor was not a compliance with the stipulation of the contract requiring a notice to be mailed, and did not put her in default, so as to preclude her from terminating the contract and recovering as, for part performance on the vendee's failure to make payments prescribed by the contract.

Appeal from Judgment on Report of Referee.

Action by Edith Y. Price against the city of New York. From a judgment for plaintiff, defendant appeals. Affirmed.

The following is the opinion of William J. Carr, referee:

In December, 1901, the parties to this action entered into a written contract providing for the delivery by the plaintiff to the defendant of coal in an approximately estimated quantity of 17,900 tons, to be delivered at various specified pumping stations of the defendant from time to time throughout the year 1902. For the coal so delivered the defendant agreed to pay at the rate of $3.87 a ton. Clause "j" of the contract and paragraph 2 of the specifications, forming a part of the contract, provided that the delivery of coal should be "as directed by the Commissioner," and the plaintiff should "carry on such contract with such force and in such manner and order, and at such times and seasons as may from time to time be directed by the Engineer, it being understood that the rate of delivery as outlined in this contract is only approximate, and may be varied by the Engineer as he may deem necessary," etc. Clause "o" of the contract provided in terms partly as follows: "That in order to enable the Contractor to prosecute the work advantageously, the Engineer shall from to time, as the work progresses, but not oftener than once a month, make an estimate of the amount of coal delivered under this contract since the last preceding estimate was made and of the value thereof, according to the terms of this contract. Upon such estimate being made, 90 per cent. of such estimated value shall be paid to the Contractor." This clause contained likewise a provision as to the certificate to be made by the engineer on complete performance of the contractor. The plaintiff entered upon the delivery of coal in January or February, 1902; and the engineer on February 28, 1902, gave an estimate and certificate as to the amount and value of coal delivered, and 90 per cent. of such value was paid to the plaintiff. A like estimate and certificate was given and a like payment made for coal delivered in March, April, and May of the same year, less 10 per cent. retained payments. Under this scheme of payment, the sum of $462.22 was retained under the February estimate, the sum of $379.52 under the March estimate, the sum of $547.28 under the April estimate, and the sum of $630.72 under the May estimate. On June 30th the engineer made an estimate and certificate showing deliveries in June of coal at the contract price of $3,284.12, and on July 30th a like estimate and certificate was made, showing a delivery in July of coal at the contract price of $4,127.15. This was followed by a like estimate for August in the sum of $3,239.90. The amount estimated for June was not paid in whole or in part until August 30th, when 90 per cent. was paid on account. The amount estimated for July and August has not been paid at all. On August 28th the plaintiff notified the defendant in writing that she claimed a breach of contract on the part of the defendant in failing to make payments on the June and July estimates, and that, because of said alleged breach, she elected to terminate the contract, and would sue for the 10 per cent. retained on the previous payments, and the value of the coal delivered in June, July, and August. This action has been brought accordingly, the plaintiff making an allowance against her claim of the 90 per

cent. part payment on August 3, 1902, made on account of the June estimate. She asks judgment for the sum of $9,679.20, with interest from August 31, 1902. I am of opinion that the foregoing facts, alleged in the complaint and established by the evidence, constitute at least a prima facie cause of action for the plaintiff.

If the plaintiff was entitled to payment on the June and July estimates, the delay and refusal on the part of the defendant constituted such a breach of performance by the defendant as entitled her to terminate the contract and recover for her past performance, as evidenced by the estimates and certificates of the engineers. Snyder v. City of New York, 74 App. Div. 428, 77 N. Y. Supp. 637; Thomas v. Stewart, 132 N. Y. 580, 30 N. E. 577; Graf v. Cunningham, 109 N. Y. 369, 16 N. E. 551; Wharton v. Winch, 140 N. Y. 287, 35 N. E. 589.

The defendant claims, however, that the plaintiff was not entitled to any payment on account of the June, July, or August estimates, because of alleged anterior breaches of performance on her account. There is no allegation in the answer that the estimates of the engineer were fraudulent and collusive. No claim is made that coal certified as delivered was not actually delivered, or that there was any mistake as to quantity or value in the estimates and certificates. Such being the case, the estimates and certificates may be said to be conclusive on the parties. Brady v. The Mayor, 132 N. Y. 416, 30 N. E. 757; Matter of Freel, 148 N. Y. 168, 42 N. E. 586; Snyder v. City of New York, 74 App. Div. 428, 77 N. Y. Supp. 637; O'Keeffe v. City, 173 N. Y. 478, 66 N. E. 194.

The answer sets up affirmatively a specific breach on the part of the plaintiff, upon which it bases a counterclaim for $13,964.19, with interest. Assuming that the defendant is not bound on this point by the certificates and estimates of its engineers, it is not apparent that it has established any facts upon which the counterclaim is allowable. A general claim is made of breaches by the plaintiff anterior to the estimates of June, July, and August; but no satisfactory evidence thereof has been offered, except as to an alleged breach subsequent to July 16, 1902. At least substantial performance prior to that time is indisputable upon the evidence, and no claim of damage or material injury to the defendant has been proved or asserted as to anything occurring or omitted prior to July 16th. The specifications, forming a part of the contract, provide in part as follows: "That in case of failure on the part of the contractor to deliver coal at the proper wharf, railroad station or switch in the quantities ordered and at the rate herein specified within fourteen days (Sundays and holidays excepted) after the date of written notice mailed to him by the Engineer directing him that shipments of coal are required, then and in that case the Commissioner shall have the right to purchase such quantity of coal in the open market as may be required and deduct from any estimate that may be due the contractor the additional cost of said coal delivered at the railroad station, switch or pumping station where it may be required over and above the price stipulated in the contract for coal at the said station."

On July 16th a letter from the engineer, dated July 16, 1902, addressed to "Mr. E. Y. Price, 13–21 Park Row, N. Y.," was deposited in the Brooklyn post office as a "registered letter." This letter required the delivery of specified quantities of coal at specific pumping stations, and gave notice that in case of nondelivery within fourteen days of its date the engineer would certify the fact to the commissioner, in order that coal might be purchased in open market on the plaintiff's account under the provisions of the certificate. At this time the June estimate had been unpaid, and, before the fourteen days specified in the letter (Sundays and holidays excepted) could expire, payment on the June estimate would have been one month in arrears. It is questionable whether payment on the June estimate could have been delayed properly, simply in anticipation of a possible breach under the notice of July 16th. The registered letter so mailed to "Mr. E. Y. Price" was not delivered through the mails, but after some lapse of time it was returned to the sender by the postal authorities. This identical letter was afterward, in September 1902, sent by messenger to the plaintiff's office, and there delivered. Between September 1st and December 31st the defendant bought coal in open market, and

charged the same to the plaintiff, in the net amount of its counterclaim. It was conceded on the trial that the price paid by the city was the fair market price at the time, prices of coal having risen presumably because of the then pending "coal strike." As no coal was delivered by the plaintiff under this letter, the question arises whether at the expiration of fourteen days from July 16th, Sundays and holidays excepted, she was in such default as to justify the defendant in withholding payments previously earned under the engineer's estimates, and in purchasing coal in open market on her account. If so, then on August 28th she was in no legal position to justify her then attempt to terminate the contract.

The proof establishes without any contradiction that the registered letter was not delivered because the letter carrier would not leave it at the plaintiff's office without obtaining the prescribed receipt from the addressee "Mr. E. Y. Price." Proof was offered that the plaintiff went to the New York post office and attempted to get the letter on the claim that there was no "Mr. E. Y. Price," and that it was intended for her; and that such attempt was unsuccessful. The defendant contends, however, that, having mailed the letter as prescribed in the specifications, its duty had ended, and that actual non-delivery thereof did not excuse the plaintiff, as the parties had deliberately contracted as to the method of the prescribed notice. Palmer v. Phœnix Ins. Co., 84 N. Y. 63; Kenyon v. K. T. & M. A., 122 N. Y. 247, 25 N. E. 299; McCluskey v. Nat. Life Ass'n (Sup.) 28 N. Y. Supp. 931. Such unquestionably would be the rule if the mailing had been done in the ordinary manner, because in that case the sender would have parted with all control over the letter by its delivery to mail authorities, as the agents of the addressee. Such is the theory of the decisions cited by the defendant. Where, however, a letter is wrongly addressed, or where the sender by affirmative act controls the circumstances of actual delivery to the addressee and by such act prevents actual delivery, the principle of the rule asserted by the defendant would not apply necessarily. No reported decision is cited by either counsel which considers the question of mailing a registered letter as constituting in itself delivery. Independent research by the referee does not disclose any authority on the point. In Gaffney v. Bigelow, 2 Abb. N. C. 311, the question arose as to proper service by mail of pleadings in an envelope on which was printed a direction to return in five days if not called for. The matter in the envelope was, however, delivered to the addressee in the usual course of business, but he returned the papers on the ground that the mailing was qualified by the direction to return. At Special Term his action was upheld, but the General Term reversed the court below on the theory "that the indorsement on the envelope to return in five days did not prejudice the party to whom it was addressed unless it was made to appear that, by reason of the return in obedience to the indorsement, the party failed to receive it. It appearing in this case that the papers were received notwithstanding the indorsement, the order was reversed." In the case at bar, however, the letter of July 16th was never delivered through the mails, nor in any other manner prior to the plaintiff's attempt to terminate the contract on August 28, 1902. The apparent object of registering the letter of July 16th was to have affirmative evidence of its actual delivery. The United States Revised Statutes [U. S. Comp. St. 1901, p. 2686] regulating the registry of mailed matter prescribe the taking of a receipt on the delivery of any mailed matter (sections 3927, 3928). This receipt is that of the addressee, presumptively. Can a letter so mailed be said to have been mailed in the ordinary manner, so that in a case of actual nondelivery to the addressee a delivery to the postal officers will suffice? The word "mailed," used in the specifications, must be interpreted in its ordinary use, and refer to mailing in the ordinary method of business. Such at least is the common rule as to the interpretation of the language of written instruments. The letter was never received by the plaintiff through the mails because of the affirmative action of the defendant in its form of addressing the envelope and of registering it. The delivery of a letter to the postal authorities under these circumstances does not constitute them the agents of the addressee, and is, at most, but a qualified delivery, which restricts the actual receipt of the mail matter to well understood conditions. I am of opinion that the plaintiff was not in default on August 28,

1902, and was then entitled to terminate the contract, and recover all moneys earned up to that time under its provisions.

Under the circumstances of this case, the plaintiff is entitled to recover without any final certificate of the engineer showing complete performance of the contract.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

John J. Delany, Corp. Counsel, for appellant.

Charles E. Fiske, for respondent.

Geo. W. McKenzie and Charles E. Fiske, for respondent.

PER CURIAM.   Judgment affirmed, with costs, on the opinion of William J. Carr, referee.

---

PEOPLE ex rel. SPENCERIAN PEN CO. v. KELSEY, Comptroller.

(Supreme Court, Appellate Division, Third Department.   May 3, 1905.)

1. FOREIGN CORPORATIONS—LICENSE TAX—PROPERTY EMPLOYED IN STATE—TRADE-MARK.

In determining the amount of capital stock of a foreign corporation employed in the state, for the purpose of determining the amount of its franchise tax, the value of a trade-mark owned by the corporation may be considered.

2. SAME—LICENSE TAX—INCREASE—AUTHORITY OF COMPTROLLER.

Under Tax Law (Laws 1896, pp. 856, 864, c. 908) §§ 181, 195, providing that, if the capital stock of a foreign corporation doing business in the state is increased, the license fee may be increased, and that the Comptroller may, within one year after determining the amount of the tax, and on the application of a taxpayer or the Attorney General, make a new determination, the Comptroller has no authority on his own motion, and after the expiration of more than one year, to increase the license fee of a corporation which has not increased its stock.

Certiorari by the people, on the relation of the Spencerian Pen Company, against Otto Kelsey, as Comptroller of the state of New York, to review a determination of the latter as to a franchise tax to be paid by relator.   Determination confirmed in part, and reversed in part.

The relator is a foreign corporation organized under the laws of New Jersey, and it has a salesroom and place of business in the city of Newark, in that state.   Its capital stock is $225,000, and it was originally issued in consideration of an assignment to it of a trade-mark registered under the laws of the United States.   In the year 1899 the relator applied for a license to do business in this state, and the Comptroller then assessed the value of the capital employed in this state at $50,000, and levied a license tax thereon of $62.50.   The evidence on which the comptroller fixed such amount showed that the company had an office in the city of New York, and did business and made sales there; also that it there had, in its stock in trade, its bank balance, and its average bills and accounts receivable, and its office fixtures, etc., $50,000 worth of property.   This license fee was then paid, and the relator operated under it until in the month of January, 1904, when the Comptroller, on his own motion, charged against the relator an increased and additional license fee, upon the basis that the whole of its capital stock, to wit, $225,000, was employed within this state.   Upon proceedings thereupon had, the Comptroller stated a new account against the relator, wherein the relator is charged with a license tax of $274.25, upon a basis of $219,400 of its capital being employed within this state.   He also, for the year ending October 31,